### J. C. CAMERON ET AL. v. CAROLINE E. LEWIS.

ATTORNEY AND CLIENT.  *Attorney's relation to client's land.  Breach of professional duty.*

L., holding P.'s note for $3,200, agreed to accept from him three notes of C. aggregating $2,700, in absolute payment of that amount of his note.  C. was insolvent, and his notes were only valuable because they constituted a lien on a tract of land sold to him by P.  The title to the land being involved, L. employed J. C. C., an attorney, to perfect the negotiation for her with P. J. C. C. consummated the transfer of the notes, and received a fee therefor. P. indorsed the notes "without recourse."  J. C. C., while engaged in this business, or soon thereafter, discovered that the land which constituted the security for the notes of C. was held by the State for taxes, and that the period for redemption had expired.  He communicated this information to N., his father-in-law, who purchased the land, and had the deed made to his daughter, the wife of J. C. C., and his minor son.  One-half of the purchase-money was furnished by N., and the other half by J. C. C.'s wife, but was handed by him to N.  Before the forfeiture to the State, C. had only a life-estate in a part of the land, and the children of N. owned the reversion thereof.  Upon a bill filed by L., the court rendered a decree directing the conveyance of the title held by J. C. C.'s wife and her brother to the complainant.  *Held,* that J. C. C.'s conduct was a breach of his professional duty to L., and cannot be taken advantage of by him or members of his family; and that the decree is correct, except as to that part of the land in which the children of N. owned the reversion, but as to it the decree should have ordered the conveyance of the title to the life-estate only.

APPEAL from the Chancery Court of Madison County.
Hon. E. G. PEYTON, Chancellor.
The case is stated in the opinion of the court.
*Jenkins & Little* and *Frank Johnston,* for the appellants.
1. The proof shows that Cameron was Nicholson's attorney, and in that capacity made the investigation by which he dis-

covered that the land was held by the State for taxes, and was subject to purchase. And there is no proof that the appellee ever employed Cameron to make an investigation in reference to the title to the land, or as to its condition in respect to taxes, or that he ever acted in that capacity for her. Nor does the proof show that the information referred to was obtained by Cameron while acting as the appellee's attorney, or by means of such employment. Cameron was under no obligation to the appellee in regard to the information thus obtained. The fact that Cameron had acted as Mrs. Lewis's attorney in the transfer of the notes from Powell to her, would not preclude him from afterwards informing Nicholson of the condition of the title to the land, nor preclude the latter from buying it upon such information. *Bowers* v. *Virden, ante,* p. 595.

2. The appellee waited too long before bringing her suit. By her delay the defendants were induced to forego the prosecution of the ejectment suit by writ of error until their right had become barred by limitation. She ought not to be permitted to prosecute a suit commenced after the appellants had lost their right to the writ of error through her laches. *Johnson* v. *Outlaw, ante,* p. 541.

3. At the time the appellee employed Cameron, she was a stranger to the land, having no right or title thereto. Therefore she has no ground for her complaint. *Terrell* v. *Gathright* (MS.).

4. Mrs. Lewis knew, when she employed Cameron, that he was Nicholson's attorney, and she cannot complain of his acts for Nicholson antagonistic to her interests. Story on Ag., sect. 211, note 1.

*Frank Johnston* and *J. W. Jenkins* also argued the case orally.

*Nugent & McWillie,* for the appellee.

That Cameron was employed, not only to get the notes, but to see that Mrs. Lewis was secure in taking them, there can be no doubt. That he knew the only security for their ultimate

payment was the land in controversy, is admitted by him. That the whole value of the Clymer notes was destroyed by the outstanding tax-title, he also knew and admits. He took the notes as absolute payment of $2,700 of the debt to Mrs. Lewis, and allowed Powell to indorse them " without recourse." It is manifest that Cameron became acquainted with the fact of the sale of the land to the State in the course of his employment as Mrs. Lewis's attorney, and that he availed himself of the information, thus obtained, by communicating it to his father-in-law.

Upon the pleadings and proof in the case, the decree is right.

*W. L. Nugent*, of counsel for the appellee, argued the case orally.

CHALMERS, J., delivered the opinion of the court.

Mrs. Lewis held a note for $3,200 against one Powell. She agreed to receive from him in absolute payment and satisfaction thereof, *pro tanto*, three notes held by Powell against one Clymer, amounting in the aggregate to $2,700, Powell agreeing to secure the balance due on his note by the pledge of a life-insurance policy. Clymer was personally insolvent, and his notes were only valuable because they constituted a lien upon a tract of land which had been sold to him by Powell. The title to the land was involved, and Mrs. Lewis, being distrustful of Powell's good faith in the matter, employed Cameron, an attorney-at-law, to perfect the negotiation for her. Cameron undertook and performed the required service, receiving the customary fees therefor. While engaged in the business, or very shortly thereafter (the testimony is conflicting as to the date), he discovered that the land which constituted the security for, and gave the sole value to, the Clymer notes had become forfeited to the State for unpaid taxes, and that the period of redemption had expired. He at once communicated knowledge of this fact to his father-in-law, Nicholson, who was, and had been for several months, an inmate of his house. Forthwith, Nicholson bought the land from the

State, taking the tax-deed to his daughter, Cameron's wife, and to her minor brother. One-half the money used in the purchase was furnished by Nicholson, and the other half was handed him by Cameron, though it is claimed that it had been borrowed for the purpose by Cameron's wife from Cameron's brother.

As soon as the tax-deeds had been procured, Cameron wrote Mrs. Lewis a letter, stating that " it had become his duty " to inform her that, upon information furnished by himself, Mr. Nicholson had bought the land for his son and daughter, and expressing a hope that she would be able to realize her money out of Powell. Now, Powell, like Clymer, was notoriously insolvent ; and if he had not been, Cameron, acting as Mrs. Lewis's attorney, had just received from him the Clymer notes, assigned " without recourse," and had indorsed the full amount of them as an absolute payment on Powell's own note ; so that the full purport of Cameron's letter was, that " it had become his duty " to inform his late client (if, indeed, the relationship between them had then terminated) that, upon information communicated by himself, his father-in-law had rendered worthless the security which he had been employed to obtain for her, and, by means of money which he had handed him for the purpose, had vested the ownership of that security in his (the writer's) wife and brother-in-law. That the transaction, as thus stated, is wholly indefensible, does not admit of serious question. That Cameron himself could have bought up the outstanding tax-title, and used it against his client, nobody will contend. Neither can it be tolerated that, upon information furnished by him, and by money forwarded through, if not supplied by him, the title has been vested in his wife and her minor brother. To permit him, by such easy evasions, to accomplish indirectly that which the law forbids him to do directly, would be a reproach to any system of jurisprudence ; nor can members of his family be allowed to reap the benefit of his breach of professional duty.

Perceiving the force of these principles, Cameron gives this explanation of his conduct: His father-in-law had been, some years before, the owner in fee of a portion of the land in question, and a life-tenant of the balance with reversion in his children. From both portions of it he had been ejected, under a judgment rendered in the Circuit Court of Madison County. Cameron had been employed by him to prosecute a writ of error to this court from that judgment.

It was, as he says, after the termination of his employment by Mrs. Lewis, and while investigating the merits of the ejectment suit, that he discovered the forfeiture for taxes, and he disclosed the fact to his father-in-law because it was his duty, as his lawyer, to do so. It is difficult to see how the investigation of the judgment in the ejectment suit could have led to the discovery of a forfeiture for taxes, which took place subsequent to its rendition, or what effect that fact could have upon the prosecution of the writ of error to this court. But, admitting the truth of the statement, all justification for the purchase, on that ground, is overthrown by the testimony of the father-in-law, to the effect that he had abandoned all idea of suing out a writ of error, and had so informed Cameron before the purchase of the tax-title. It is insisted, however, by Cameron, that the purchase was made for the further purpose of protecting the reversionary interest of Nicholson's children in the land. This point is well taken; and, in so far as it is used for that purpose only, Mrs. Lewis cannot complain, because her right to subject to the payment of the Clymer notes that portion of the land of which Nicholson had been the life-tenant extended only to the life-estate. She was, therefore, in no manner damnified by a purchase from the State of the reversion in that portion of the land, and will be fully protected by debarring the holders from using it to the prejudice of her life-estate. To this extent the decree below is erroneous, and will be corrected here.

There is no merit in the suggestion that Mrs. Lewis cannot maintain this suit because she delayed bringing it, after she

had full knowledge of all the facts, until Nicholson's right to prosecute a writ of error in the ejectment suit had become barred. As before remarked, Nicholson testifies that he had abandoned all idea of suing out the writ of error before he purchased the tax-title.

Let the decree be corrected as indicated, and affirmed.