## J. C. CAMERON ET AL. *v.* CAROLINE E. LEWIS ET AL.

1. HUSBAND AND WIFE. *Curtesy. Res adjudicata. Ejectment.*
   The fact that a purchaser at a trustee's sale recovers in ejectment against the grantor after his wife's death does not affect, in her children, a title acquired by her through sales of the land under judgments against her husband older than the trust deed.

2. SAME. *Fraudulent conveyance. Sheriff's sale. Debtor's admissions.*
   Under a bill by the vendees of such purchaser, to cancel the children's title because obtained by their mother fraudulently, admissions of her husband, made soon after her purchase, are competent, if at all, only on proof of conspiracy, as explanatory of his possession, or as part of the *res gestæ* with the conveyance.

3. SAME. *Covenant of warranty. Purchasing paramount title.*
   In such case the wife is not estopped by her husband's covenant of warranty in the trust deed to acquire the superior title under the judgments, and her purchase does not inure to the benefit of the *cestui que trust. Hardeman* v. *Cowan,* 10 S. & M. 486, and *Taylor* v. *Eckford,* 11 S. & M. 21, disapproved.

4. SAME. *Fraud. Evidence. Burden of proof.*
   The transaction is, however, very suspicious, and slight circumstances, such as her husband making the purchase and paying the money, and her want of apparent means, throw on her, and volunteers under her, the burden of showing good faith, and, unless they do so, warrant the cancelling of their title as fraudulent.

5. SAME. *Limitation of actions. Bill to remove clouds.*
   Lapse of ten years after the wife's purchase under the judgments will not bar vendees of the purchaser under the trust deed from maintaining their bill to vacate her title, if he recovered the land within that period, in ejectment against the tenant by the curtesy, and his vendees continue in possession.

APPEAL from the Chancery Court of Madison County.
Hon. E. G. PEYTON, Chancellor.

*R. Shotwell*, for the appellants.

By virtue of his purchase at the sale under the senior judgment, Ricks acquired title to all the land superior to the trust deed and to the title acquired by Mrs. Nicholson under the Thompson judgment. No presumption of fraud arises from Nicholson's failure to claim his homestead exemption. It was a mere privilege which he was not bound to exercise, in order to take property from one creditor and give it to another. The compromise between Ricks and Mrs. Nicholson was admissible and made in good faith. Only by a successful attack upon the title of Ricks can the bill be maintained, for he had the right if he chose to give Mrs. Nicholson the three hundred and thirty acres which he exchanged for her title in settlement of their conflicting rights.

*Shelton & Shelton*, on the same side.

1. The court erred in overruling the plea of the ten years' statute of limitations, enacted by Code 1857, p. 403, art. 31 and re-enacted in Code 1871, § 2175. Recovery in ejectment against the tenant by the curtesy did not stop the running of the statute, because the plaintiff held by that means only the husband's estate, which ended at his death, and which was no obstacle during his lifetime to the maintenance of this bill against his wife's heirs. She held adverse title from the date when Ricks conveyed to her; and this bill could have been maintained by the complainants who knew of her title as well before as after the trustee's sale.

2. No fraud is shown in Mrs. Nicholson's purchase at the sale under the Thompson judgment. The money paid was her own, but if it were her husband's she would hold the title as trustee for his creditors, subject to their priorities of lien. From Ricks she received a good legal title, which did not injure Powell, who had no interest in the land after the sale at which Ricks bought. It was not only Nicholson's right, but his duty, to decline to claim the homestead exemption against the older judgment creditor in order to give it to the subsequent trust deed. *Hill* v. *Franklin*, 54 Miss. 632. Nicholson's statements made after the sale are inadmissible, because no part of the *res gestæ*. 1 Greenl. Evid. § 113. Excluding them, no evidence tending to establish fraud remains.

*Nugent & McWillie,* for the appellees.

1. Fraud is the ground of relief, and the appellees were not bound to attack a void title until its assertion by the appellants. The latter were not prevented from proceeding by possession of the former of the life-estate. *Taylor* v. *Smith,* 54 Miss. 50. In such a case as this, equity will not permit the appellants to avail themselves of the bar even if it had accrued. *Edwards* v. *Gibbs,* 39 Miss. 166 ; Angell on Limitations, §§ 183, 190. Until recently concealment of this fraud was successfully accomplished. The fraud is shown independently of Nicholson's admissions, and no effort was made to disprove the *prima facie* case. Nicholson's admissions are however competent, not only because part of the *res gestæ* (*Dorne* v. *Southwork Manuf. Co.,* 11 Cush. 205), but also upon the ground of the conspiracy between him and his wife to defraud Powell (*Bell* v. *Coiel,* 2 Hill Ch. 108 ; *Man* v. *Ward,* 2 Atk. 228), and on the further ground that he was the real grantor at the sale to his wife. *Land* v. *Jeffries,* 5 Rand. 211.

2. Title acquired by Mrs. Nicholson inured to the benefit of the holder of her husband's trust deed. She could not buy in the paramount title after her husband had made his covenant of warranty. *Hardeman* v. *Cowan,* 10 S. & M. 486. The rule is a general one, and should not be weakened by exceptions and refinements. *Mangum* v. *Finucane,* 38 Miss. 354 ; *Conway* v. *Brown,* 5 Heisk. 237 ; *Flick* v. *Devries,* 50 Penn. St. 266 ; *Earl* v. *Champion,* 65 Penn. St. 191 ; *Mercer* v. *Hooker,* 5 Fla. 277 ; *Raines* v. *Woodward,* 4 Rich. Eq. 399. In any event, the close relation between the parties makes such a transaction exceedingly suspicious, and, in the absence of all evidence of its good faith, the decree must be affirmed.

3. Nicholson was not in a position to waive the homestead, and his judgment creditors did not have any right to take it on execution. The right to the homestead passed by the deed to the trustee, for the use of Powell or his assignees. *Myers* v. *Ford,* 22 Wis. 139 ; *Adrian* v. *Shaw,* 82 N. C. 474 ; *White* v. *Owen,* 30 Gratt. 43 ; *Weber* v. *Short,* 55 Ala. 311 ; *Wing* v. *Hayden,* 10 Bush, 276. Nicholson could not waive his homestead privilege without consideration at the time his land was sold under execution. *Denny* v. *White,* 2 Cold. 283 ;

*Beecher* v. *Baldy*, 7 Mich. 488. A right of homestead cannot
be divested, except as provided by the statute, and it cannot be
lost by mere laches. *Hubbell* v. *Canady*, 58 Ill. 425 ; *Bartholo-
mew* v. *West*, 2 Dill. 290 ; *Burney* v. *Leeds*, 51 N. H. 253 ; *Lam-
bert* v. *Kinnery*, 74 N. C. 348; *White* v. *Rowley*, 46 Iowa, 680 ;
*Perry* v. *Lewis*, 49 Miss. 443 ; Thompson on Homestead and
Exemptions, §§ 409 *et seq.*, 470, 645, 821–828.

CHALMERS, C. J., delivered the opinion of the court.

In January, 1867, J. J. Nicholson executed to J. R Powell
a trust deed on a tract of land consisting of nine hundred and
thirty acres, upon which he at the time resided, to secure said
Powell in the contemporaneous loan of four thousand six hun-
dred dollars. The land, except so much of it as was exempt
as a homestead (one hundred and sixty acres), was already in-
cumbered by two judgments older in date and prior in lien to the
trust deed. The elder of these was in favor of B. S. Ricks for
the sum of five thousand dollars. The junior was for a few
hundred dollars only, in favor of one Thompson. Nicholson
sued out a writ of error from the Ricks judgment, and while
the same was pending in this court a sale took place under the
Thompson judgment, at which the whole tract was bid off to
Mrs. Nicholson, the wife of the execution debtor. Nicholson
made the bid for his wife, paid the money to the sheriff, and
directed the deed to be made to her. The Ricks judgment
having been subsequently affirmed, the attorney who controlled
it, believing the purchase by Mrs. Nicholson to be fraudulent,
levied again on the land, and at the sale bought it for his client.
Thereafter by a compromise between Nicholson and Ricks's
attorney, Ricks made a deed to Mrs. Nicholson of three hun-
dred and thirty acres, including the one hundred and sixty of
exemption, and received a deed from her to the remaining six
hundred. It is the title to the three hundred and thirty re-
tained by Mrs. Nicholson that is involved in this suit. Mrs.
Nicholson held it until her death in 1873, though in the mean
time Powell by a sale *in pais* had foreclosed his trust deed, and
received from the trustee a deed in fee to the entire tract.
Upon the death of his wife, Nicholson became seized as tenant
by the curtesy of the land held by her; and Powell at once

brought ejectment against him, and recovered possession by virtue of the title acquired under the trust deed.   This recovery, which occurred in 1874, did not affect the validity of Mrs. Nicholson's title, since, conceding it to be good, Powell, as Nicholson's grantee, was entitled to subject the interest which the latter had inherited as tenant by the curtesy from the wife. Powell and his subsequent grantees, who are his children and the present complainants, have held continuous possession since this recovery in ejectment, and are now in possession. Nicholson is now dead, and with his death terminated the estate by the curtesy.   The children of Mrs. Nicholson were preparing to assert their rights to the land, as heirs of their mother, when this bill was filed by the parties in possession, enjoining them from doing so, and praying a cancellation of the deeds held by her, on the ground that they had been procured in fraud of the husband's creditors, and especially in fraud of Powell's rights under the trust deed.   The allegations of the bill are that Nicholson bought the land with his own money, and had the title vested in her, without any action or knowledge on her part, for the express purpose of defeating the trust deed held by Powell.

It was attempted to sustain these charges by proof of admissions made by Nicholson shortly after the execution sale, at which his wife acquired her title ; but we do not think that such proof was admissible.   It could only be so on the theory that Nicholson, and not the sheriff, was to be regarded as the real grantor in the deed to the wife, and then only as to admissions made while he was in possession of the land, explanatory of his possession, or when so contemporaneous with the conveyance as to constitute a part of the *res gestæ,* or upon proof of a conspiracy between the husband and wife.   None of these things were shown, and hence the testimony was inadmissible.   But, while there was a failure of direct proof of the fraud upon the part of the complainants, we think that the decree of the Chancellor, holding the wife's title fraudulent, should be affirmed, because of the absence of any proof of its *bona fides* on the part of the respondents.

It was held in the cases of *Hardeman* v. *Cowan,* 10 S. & M. 486, and *Taylor* v. *Eckford,* 11 S. & M. 21, that where a hus-

band had made a conveyance with covenants of warranty, the same principle of law which makes any acquisition of an adverse title by him enure to the benefit of his grantee was applicable also to his wife ; so that, wherever the husband is estopped by his deed from the acquisition of an outstanding title or incumbrance, the wife is also. No authority is cited in support of this proposition, nor have our own researches conducted us to any. The doctrine has not been announced, save in these two cases, either in this State or elsewhere, so far as we have been able to discover, nor do we think it a sound legal principle. It is true that in cases where the husband is precluded from purchasing by some matter *in pais*, which makes it fraudulent in him to do so, the law will impute knowledge of the facts to the wife, and estop her also, so as to prevent an evasion of a moral duty on his part by the easy device of a purchase by the wife. This is upon the ground that the law will presume the wife to have knowledge of the facts through the husband, since, owing to the marital relation, it is impossible to make proof of such knowledge. *Cameron* v. *Lewis*, 56 Miss. 601. But it is familiar learning that estoppel by record extends only to parties and privies, and we know of no instance in which the deed of the husband is held to bind the wife. It is indeed much mooted whether a married woman is estopped by her own deed from acquiring a title adverse to that conveyed by her, and the decided weight of authority elsewhere is that she is not. How then can she be estopped by the deed of her husband with which she had no connection ? While we are of opinion that there is no absolute legal preclusion of her right to buy, yet such purchases must always be regarded as in the highest degree suspicious, and very slight circumstances will be seized upon to throw on her the burden of showing the *bona fides* of her title.

The facility for and the frequency of frauds by pretended purchases by the wife, effected by the husband's means, and the difficulty of detecting and exposing them, make the necessity of this rule imperative. In the present case the wife was entirely unknown to all parties concerned, except on paper. The husband made the purchase and paid the money, and directed the deed to be executed to the wife. It was with him that

the arrangement was perfected with Ricks's attorney, by which she gave up two thirds of the land, and acquired another deed to the one third involved in this litigation. The bill alleges that she was entirely without property, and the only witness examined on the subject testifies that she had none so far as he knew. These uncontradicted facts, in connection with the relations of the parties, threw upon those who were volunteers under her the burden of establishing, by testimony *dehors* the recitals of the deeds, that the land was purchased with her money, and not that of the husband, and warranted the conclusion of the Chancellor that her title was fraudulent.

The ten years' statute of limitation was pleaded by the defendants to the entire relief sought by the bill. They insist that inasmuch as more than ten years have elapsed since their mother's title was acquired it cannot now be assailed. But during the greater part of that time the complainants have been, and are now, in possession of the land ; and, while they might have filed their bill at any time *quia timet*, they were not bound to do so until advised that the adverse title was about to be asserted against them. He who is out of possession can derive no advantage from the flow of time, and he who is in possession can never be damaged by it.

*Decree affirmed.*

CAMPBELL, J., having been of counsel, took no part in the decision.