DAY *v.* COWART, et al.

Division A. Oct. 15, 1951.

No. 38048 (54 So. (2d) 385)

**Jones & Stratton,** for appellant.

**W. W. Hewitt,** and **Overstreet & Kuykendall,** for appellees.

**Kyle, J.**

C. S. Day, the appellant, filed suit in the Chancery Court of Franklin County against C. F. Cowart and others for the cancellation of a tax sale of a 76-acre tract

of land sold by the Sheriff and Tax Collector of Franklin County on the first Monday of April, 1946, to C. F. Cowart, for delinquent taxes due and unpaid for the year 1945, and for the cancellation of deeds executed by Cowart to the other defendants after the period of redemption had expired.

The complainant alleged in his bill of complaint that he had purchased the above mentioned tract of land (saving and excepting an undivided one-half interest in the oil, gas and minerals on said land) from E. F. Cowart on July 10, 1945; that the deed of conveyance executed by E. F. Cowart to the complainant was prepared by C. F. Cowart, who at that time was a practicing attorney in the Town of Meadville; that C. F. Cowart was a brother of E. F. Cowart and had been employed by the complainant as his attorney for several years prior thereto; that the deed of conveyance executed by the said E. F. Cowart to the complainant contained the usual covenants of warranty of title, and that E. F. Cowart, under the general warranty of title, was obligated to pay the state and county taxes on the land for the year 1945; that E. F. Cowart did not pay the taxes for the year 1945, when due, and that the said tract of land was advertised and sold by the sheriff and tax-collector on the first Monday of April, 1946, for the taxes due and unpaid for the year 1945; and that at said sale C. F. Cowart appeared and purchased said land, and a few days after the time for redemption had expired conveyed said land to his daughter, and later to his brother, W. N. Cowart; and that W. N. Cowart then conveyed back to E. F. Cowart an undivided one-half interest in the oil, gas and other minerals on said land; and that all of the said conveyances were executed by said parties for the purpose of cheating and defrauding the complainant and depriving the complainant of his property.

The complainant further alleged that C. F. Cowart prepared the deed of conveyance dated July 10, 1945, at the request of complainant and E. F. Cowart, and that

C. F. Cowart, as the attorney thus employed to prepare said deed, was disqualified to purchase said land at the tax sale; that none of C. F. Cowart's subsequent grantees were purchasers for value without notice of the trust relationship which existed between Cowart and the complainant; and that Cowart and his grantees should be deemed to hold the title to said land in trust for the complainant.

The complainant also charged in his bill that the sale of said land for taxes was void for the reason that the property was not assessed, advertised and sold according to law, in that the minutes of the board of supervisors failed to show that the board met on the first Monday of August, 1944, to hear objections to the assessments on the real property assessment roll, or that the board sat from day to day until all objections had been disposed of, or that the board equalized the real property assessments for the year 1945, and in that the sale of the lands, made by the sheriff and tax collector on the first Monday of April, 1946, was not advertised in the manner required by law.

The complainant in his bill asked that the court by proper decree divest title to said tract of land out of the defendants and reinvest said title in the complainant, or that the court declare the tax sale void and cancel and annul the several deeds executed by C. F. Cowart and the other defendants to the land after the period of redemption from the tax sale had expired.

The defendants filed separate answers, and in his separate answer C. F. Cowart stated that he prepared the deed dated July 10, 1945, at the request of his brother, E. F. Cowart, and he denied that he was employed at that time by the complainant as his attorney or that he had ever been employed by the complainant as his attorney in any capacity or for any purpose.

The complainant, C. S. Day, testifying in his own behalf, stated that he purchased the 76-acre tract of land referred to above from E. F. Cowart on July 10, 1945;

that Cowart asked the complainant whether he had any objection to his brother preparing the deed; that the complainant stated that he had no objection and the complainant further stated, ''I took his word as to the title.'' The complainant testified that C. F. Cowart had represented him prior to that time as an attorney, ''Any advice I wanted I always asked him for it, and if I wanted a deed he always made it for me.'' The Complainant further stated that he did not hire any attorney to represent him in the purchase of the property; that C. F. Cowart was employed by E. F. Cowart to prepare the deed by agreement of the parties. He admitted that C. F. Cowart had not furnished him a certificate of title, or an abstract of title, to the property. The complainant could not recall any specific instance in which C. F. Cowart had represented him as an attorney prior to July 10, 1945, but he insisted that C. F. Cowart had prepared timber deeds for him.

The complainant introduced the minutes of the board of supervisors for the July 1944 meeting, at which the assessment rolls were equalized, and the August 1944 meeting, at which objections to assessments were heard and final approval given to the real and personal property assessment rolls, and also the minutes of the board of supervisors for the October 1945 meeting, at which the county tax levies for 1945 were made. The complainant also introduced in evidence a certified copy of the page of the land assessment roll for the years 1944 and 1945, showing the assessment of the above mentioned tract of land, and a certified copy of the list of lands sold to individuals by the sheriff and tax-collector on the first Monday of April, 1946, for delinquent taxes due and unpaid for the year 1945.

No other witnesses testified for the complainant.

C. F. Cowart testified as the only witness for the defendants. Cowart testified that his brother, E. F. Cowart, and the complainant came to his office on July 10, 1945, and that E. F. Cowart requested him to prepare

a deed of conveyance of the 76-acre tract of land to the complainant (reserving to the grantor an undivided one-half interest in the oil, gas and other minerals in said land), and that he prepared the deed but made no charge for his services. The witness stated that during the following April he noticed on the bulletin board that this particular tract of land had been advertised for sale for taxes, and that he bid on and purchased the land at the tax sale. The witness stated that he had never represented the complainant as his attorney prior to the date of the tax sale, and that so far as he could recall the complainant had never paid him for any legal services; that the complainant talked to him once in a while about various matters; and that the complainant's brother had employed him as attorney in a chancery court suit filed in 1949. The witness stated that he conveyed the tract of land that he had purchased at the tax sale to his brother, W. N. Cowart, a few days after the time for redemption from the tax sale had expired, for the reason that he thought that his brother could make an advantageous sale of the timber, and that he later conveyed the tract of land to his daughter, Mrs. Alice C. Zumbro, who paid him $5 an acre for the land. He stated that he did not discuss the matter of the tax sale with his brother prior to the expiration of the period of redemption. On cross-examination the witness stated that he was employed as attorney for the Board of Supervisors of Franklin County at the time of the purchase of the land at the tax sale.

At the conclusion of the testimony the chancellor held that the proof offered by the complainant was not sufficient to justify the granting of any of the relief sought in the bill of complaint; and the chancellor entered a decree dismissing the bill of complaint. From that decree the complainant has prosecuted this appeal.

The appellant in his assignment of errors and in his brief presents several grounds for reversal of the decree of the chancellor. The appellant's main contention, how-

ever, is that C. F. Cowart was disqualified from purchasing the land in controversy at the April 1946 tax sale because of the alleged relationship of attorney and client that existed between Cowart and the complainant at the time of the tax sale and prior thereto, and the appellant cites in support of his contention the cases of Hoopes v. Burnett, 26 Miss. 428; Cameron v. Lewis, 56 Miss. 601; and Sullivan v. Walker, Miss.; 12 So. 250. In the Hoopes case, Hoopes was retained for the purpose of obtaining a judgment against one Samuel McComb and effecting a collection thereof. Hoopes represented to his clients that McComb was insolvent, and finally induced his clients to compromise the judgment for the sum of $100 with Hoopes paying the cost and releasing his claim for attorney's commissions. In the meantime Hoopes procured from McComb and his wife a conveyance of an undivided two-thirds interest in the house and lot in satisfaction of the judgment, and this fact was never communicated by Hoopes to his clients, and Hoopes' clients never consented for the attorney to take the two-thirds interest in the lot in payment of the judgment. The Court held in that case that what the attorney acquired in his settlement with the debtor must inure to the benefit of his clients.

In the case of Cameron v. Lewis, supra, Mrs. Lewis held a note for $3,200 against one Powell. She agreed to accept in payment thereof, pro tanto, three notes held by Powell against one Clymer amounting to $2,700, Powell agreeing to secure the balance due on his note by the pledge of a life insurance policy. Clymer was personally insolvent, and his notes were valuable only because they constituted a lien upon a tract of land which had been sold to him by Powell. The title to the land was involved, and Mrs. Lewis employed Cameron, an attorney at law, to handle the negotiations and settlement for her. While engaged in handling the matter for his client, Cameron discovered that the land upon which the Clymer notes constituted a lien had been forfeited to the state for

taxes, and that the period for redemption had expired; and Cameron induced his father-in-law, Nicholson, to purchase the land from the state, taking the tax deed in the name of Cameron's wife and her minor brother. Cameron furnished one-half of the money and Nicholson the other half for the purchase of the tax title. The Court held that Cameron's action in having his father-in-law purchase the paramount tax title, which in effect destroyed the value of the notes held by Cameron's client was wholly indefensible, and that the purchase would be treated as having been made for the benefit of Cameron's client.

In the case of Sullivan v. Walker, supra, the facts were somewhat more complicated. The attorney had been employed on behalf of certain devisees, some of whom were infants, to recover lands owned by the testator at the time of his death which had been sold by decree of the court for the payment of the debts of the testator and by collusion had been purchased by the executor at a nominal price, and which had later been sold for taxes. The attorney filed suit in the names of the devisees to recover the lands, and sometime thereafter, before any final disposition had been made of the suit, the lands were again sold for taxes and the attorney, after the period of redemption had expired, paid to the purchaser the sum he had paid at the tax sale and obtained from him a deed to the lands. The Court held that the relationship of attorney and client still existed between the parties and that the defendant was disqualified from obtaining any interest in the lands adverse to the complainants, and that the complainants should be allowed to redeem the lands from the tax sale.

The facts presented in each of the above mentioned cases, however, are very different from the facts presented in the case that we now have before us. A case more nearly in point with the case presented by the record now before this Court is the case of Bowers v. Virden, 56 Miss. 595. In that case Bowers had been

employed in 1870 to write a will for Virden, in which
Virden disposed of lands in Madison County. Bowers
was consulted by Virden's agent in 1871 about the col-
lection of rents alleged to be due and owing to Virden
for the use of the land; and in August, 1872, Bowers was
employed by Virden to write a codicil to the will. Bowers,
on January 8, 1872, purchased a part of the land which
had been disposed of by the will at a tax sale. Virden
sometime thereafter filed a bill in the chancery court
against Bowers for the purpose of having Bowers charged
as a trustee of the legal title to the land and to require
him to reconvey the land thus purchased by him at the
tax sale to Virden, upon the ground that Bowers was
the attorney and legal adviser of Virden and had pur-
chased the land in violation of his professional obliga-
tions and duties. The chancellor rendered a decree in
favor of Virden, which was reversed by this Court on
appeal; and in the opinion, written by Judge Campbell,
the Court said:

"His (Bowers') duty as to the will terminated with its
preparation; and in advising as to the collection of rent,
he incurred no continuing obligation as to the land. His
employment in these matters, or in others not connected
with the land, imposed no obligation on him to protect
the interest of appellee by preventing a sale of the land
for taxes.

"There was no litigation about the land. He had no
charge, or trust, or confidence as to it. He owed no duty
to appellee in reference to it. He could not buy for
himself an outstanding title existing when he wrote the
will, but there was no hindrance to his buying the para-
mount title subsequently arising from the non-payment
of taxes and the sale of the land therefor. He could
not do anything inconsistent with his duty to his client,
as to the matters about which he was consulted; but his
duty as to this land was not a continuing one, and had
ended before the claim of the State to sell it arose. He
could not use for his own advantage information

acquired in his professional employment, but such disability could have no application to the sale of the land for taxes, which was the act of the State, wholly independent of any agency of appellant, and unaffected by any knowledge he may have had and which transferred the title, in whomsoever it was.''

In the case that we now have before us, the evidence shows that C. F. Cowart prepared the deed of conveyance from E. F. Cowart to the appellant at the request of E. F. Cowart. The appellant testified that he did not employ any attorney to represent him in the purchase of the property, and that C. F. Cowart was employed by E. F. Cowart to prepare the deed by agreement of both parties. ■■ But, whether C. F. Cowart was representing his brother only in the preparation of the deed, or was representing both parties, his duty as to the deed, in the language of the Court in the Bowers case, ''terminated with its preparation,'' and he incurred no continuing obligation as to the land. His employment in the matter of preparing the deed imposed no obligation on him to protect the interest of either the grantor or the grantee by preventing a sale of the land for taxes. As stated by the Court in the Bowers case, he could not do anything inconsistent with his duty to his client as to the matters about which he had been consulted; but his duty as to the land was not a continuing one, and had ended before the tax levies for the year 1945 had been made.

What we have said above answers the next contention of the appellant that C. F. Cowart was disqualified from purchasing the land in controversy because of the relationship of attorney and client that existed between him and his brother, E. F. Cowart, prior to the date of the tax sale.

■■ There is no merit in appellant's contention that C. F. Cowart was disqualified from purchasing the land because of his official position as attorney for the board of supervisors at the time of the tax sale. This contention was not mentioned in the bill of complaint. The

attorney for the board of supervisors is not a public officer. Nor does he represent the tax-collector or the landowner in the sale of lands for delinquent taxes.

██ ██ The appellant also contends in his assignment of errors and in his brief that the alleged sale of the land for taxes on the first Monday of April, 1946, was void for the reason that the appellant had offered to pay the taxes on the property in controversy for the year 1945, and that the sheriff had declined to accept any payment from the appellant, stating that the taxes had been paid. No facts to support this contention were alleged by the appellant in his bill of complaint, and the proof was insufficient to show a valid tender, against which no tax sale could afterwards be made, if the issue had been properly presented in the pleadings. The appellant testified that he offered to pay the taxes to the tax-collector for the year 1945, but he did not state when such offer was made, whether before or after the date of the sale of the land for taxes. The testimony on this issue, which was not within the pleadings, was irrelevant and incompetent, and although admitted cannot be properly considered in determining the case. Griffith's Mississippi Chancery Practice, 2d Ed., par. 567.

In his last assignments of error the appellant contends that the property was not assessed in the manner provided by law, and that it was not advertised for sale and sold in the manner provided by law. We have examined the copies of the minutes of the July and August 1944 meetings of the board of supervisors relating to the equalization of the assessment rolls and the hearing of objections to assessments. ██ ██ The board completed the equalization at the July meeting on July 7, 1944, and proper notice was published that the board would be in session on the first Monday of August, 1944, for the purpose of hearing objections to the assessments, and that the board at its August meeting would remain in session from day to day until all objections, properly filed, had been disposed of. The board convened in

regular session on the first Monday of August and remained in session at least three days, until all objections and exceptions to the assessments had been heard and disposed of, and the board adopted an order finally approving the assessment rolls. This order was adopted and entered upon its minutes on Wednesday, August 9. The August meeting of the board was a regular meeting, and it was not necessary that the minutes each day show that the board continued to hear objections each day. The facts are fully shown in the final order adopted by the board on the third day, and the requirements of the statute were fully complied with.

The list of lands sold to individuals by the sheriff and tax-collector on the first Monday of April, 1946, for delinquent taxes due and unpaid for the year 1945, shows that the lands were sold pursuant to the requirements of law. The appellant offered no proof to support his contention that the sale was not properly advertised, or to show irregularity in the manner of conducting the sale.

There is no merit in either of these last two assignments of error.

The findings of the chancellor on the issues of fact are amply supported by the testimony, and the decree of the lower court is affirmed.

Affirmed.